# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHAEL I. SPURLOCK,                  Case No. 1:14-cv-990
      Plaintiff,                     Dlott, J.
                                   Litkovitz, M.J.

      vs.

COMMISSIONER OF                  **REPORT AND**
SOCIAL SECURITY,                 **RECOMMENDATION**
      Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 9), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 15).

## I. Procedural Background

Plaintiff filed his applications for DIB and SSI in July 2011, alleging disability since October 1, 2011[1], due to reflex sympathetic dystrophy (RSD) and depression. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Lorenzo Level. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On July 10, 2013, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1] Plaintiff initially claimed an alleged onset date of disability of September 1, 2006. He amended the alleged onset date to October 1, 2011 at the ALJ hearing. (Tr. 38).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

2

steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act
through December 31, 2014.

2. The [plaintiff] has not engaged in substantial gainful activity since September
1, 2006, the alleged onset date (20 CFR §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease,
lumbar spine; reflex sympathetic dystrophy; neuropathy; depressive disorder; and
anxiety disorder (20 CFR §§ 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that
meets or medically equals the severity of one of the listed impairments in 20
C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525,
404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, [the ALJ] find[s] that the
[plaintiff] has the residual functional capacity [("RFC")] to perform light work as
defined in 20 CFR §§ 404.1567(b) and 416.967(b) with limitations: stand and/or
walk about 4 hours in a normal 8-hour workday.

Postural limitations of:
• Never climbing ladders, ropes, or scaffolds;
• Occasionally climbing ramps and stairs; and
• Occasionally balancing, stooping, crouching, kneeling, or crawling;

AND
Environmental limitations of:

3

           • Avoiding even moderate exposure to hazards; and
           • Avoiding concentrated exposure to extreme cold, extreme heat, wetness,
             humidity, and vibration;

AND

           • understand, remember, and carry out simple instructions and perform
           simple tasks; and,
           • frequent interaction with supervisors, co-workers, and the public.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1965 and was 46 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR §§ 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (*see*, SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 1, 2006, through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

---

[2] Plaintiff's past relevant work was as an overhead crane operator, a medium, skilled position; a material handler, a medium, semi-skilled position; a hand packager, a medium, unskilled position; a forklift operator, a medium, semi-skilled position; and a shipping clerk/order picker, a medium, unskilled position.  (Tr. 25-26, 68, 347).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light occupations such as a housekeeper/cleaner (8,393 jobs in the state and 251,169 jobs nationally), a production-line solderer (2,501 jobs in the state and 64,107 jobs nationally), a garment tender (1,523 jobs in the state and 51,234 jobs nationally), and a mail clerk (741 jobs in the state and 17,686 jobs nationally).  The VE also testified to sedentary level jobs that plaintiff would be able to perform such as circuit board inspector (2,346 jobs in the state and 47,646 jobs nationally), a gauger (419 jobs in the state and 8,509 jobs nationally), and a table worker (1,039 jobs in the state and 21,105 jobs nationally).  (Tr. 28, 69-72).

(Tr. 14-28).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

5

### D.  Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred by not according controlling weight to his treating psychologist, Mark Schroder, Psy.D., and by not providing good reasons for such a rejection; and (2) the ALJ failed to include all relevant limitations and inadequately evaluated the assessment from Kevin Corbus, Psy.D., the consultative examiner.  (Docs. 9 and 15).  As plaintiff's two assignments of error are related, the Court will address them together.

### **Whether the ALJ erred in weighing the medical opinion evidence.**

The applicable regulations set forth three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source.  20 C.F.R. §§ 404.1527, 416.927.  A treating source opinion on the nature and severity of a claimant's impairments is generally entitled to the most weight, and the Social Security Administration must give "good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (internal citations omitted).  Where a medical source is not a treating source, the ALJ must consider the following factors in determining how much weight to afford the opinion:  the length and nature of the treatment relationship, the evidence that the physician offered in support of his opinion, the consistency of the opinion with the record as a whole, and whether the physician was practicing a specialty.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  *Ealy*, 594 F.3d

at 514.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion.  *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include the length, nature and extent of the treatment relationship and the frequency of examination.  20 C.F.R. § 404.1527(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the ALJ must consider the medical

specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'"  *Cole*, 661 F.3d at 937 (citation omitted).  *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion).  Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 (1996)).  This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Gayheart*, 710 F.3d at 544 (quoting *Wilson*, 378 F.3d at 544).

Plaintiff began his mental health treatment with Dr. Schroder on September 5, 2012 on recommendation from the University of Cincinnati pain clinic.  (Tr. 420-24).  Plaintiff had previously been evaluated by Charles Buhrman, Psy.D., to assess whether he was a suitable candidate for a spinal cord stimulator implant to treat his RSD and Dr. Buhrman opined that plaintiff's "overall prognosis would greatly improve with a stabilization of mood through psychiatric treatment with psychotropic medications and individual psychotherapy."  (Tr. 52, 400-01).  At his initial examination with Dr. Schroder, plaintiff reported he was depressed, anxious, withdrawn, and forgetful.  He wanted to "learn how to fight depression."  (Tr. 420).  Clinically, plaintiff was cooperative, but withdrawn; his though processes were "forgetful"; his

affect was congruent; and his mood was anhedonic, anxious, depressed, and "easily overwhelmed." (*Id.*).  Dr. Schroder diagnosed plaintiff with major depressive disorder, severe with associated anxiety and rule out mood disorder due to his general medical condition with depressive features.  (*Id.*).  Plaintiff saw Dr. Schroder six times over the subsequent four month period.  (Tr. 415-19).  Dr. Schroder noted that plaintiff consistently presented with a tearful appearance, sleep disturbances, distractible thought processes with memory complaints, agitated behavior, congruent affect, and anhedonic, anxious and depressed moods.  (*Id.*).  Dr. Schroder noted that plaintiff reported being isolated and having very little social support.  (Tr. 415, 417, 419).  When last seen on December 4, 2012, plaintiff was positive for suicidal ideation.  (Tr. 415).  Dr. Schroder noted that plaintiff's condition was not improving.  (Tr. 415-19).  Dr. Schroder also rated plaintiff's "current level of difficulty" as "quite a bit" (a level three on a zero to four point scale with four rated as "extreme") and rated both short-term and long-term progress as a four or a five on a ten point scale with ten being most improving.  (Tr. 415-19).

On January 4, 2013, Dr. Schroder completed a Mental Impairment Questionnaire.  (Tr. 488-92).  Dr. Schroder listed plaintiff's symptoms as poor memory, sleep disturbance, mood disturbance, panic attacks, anhedonia or pervasive loss of interests, psychomotor agitation, difficulty thinking or concentrating, suicidal ideation, social withdrawal or isolation, and generalized persistent anxiety.  (Tr. 488).  Dr. Schroder reported that plaintiff presented as "extremely anxious – easily overwhelmed – and depressed."  (*Id.*).  According to Dr. Schroder, plaintiff was not making any progress.  (Tr. 489).  Dr. Schroder opined that plaintiff would be absent from work more than three times a month due to his impairments or treatment.  (Tr. 490).  Dr. Schroder also opined that plaintiff was seriously limited in his ability to remember work like

9

procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (*Id.*). He also assessed that plaintiff had no useful ability to maintain attention for two hour segments, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress. (*Id.*). In support of these limitations, Dr. Schroder reported that his observations were clinically based and that plaintiff "is consistently extremely anxious." (Tr. 491). Dr. Schroder then opined that plaintiff suffered from an extreme limitation in activities of daily living, a marked difficulty in maintaining social functioning, and frequent difficulties in maintaining concentration, persistence, or pace. (Tr. 491).

The ALJ declined to give Dr. Schroder's January 2013 medical assessment controlling weight because "it indicated limitations that were not supported by the evidence, including the claimant's testimony (SSR 96-2p)." (Tr. 25). Instead, the ALJ gave only "some weight" to Dr. Schroder's medical source statement. (*Id.*). The ALJ gave no further explanation for his decision in this regard.

Plaintiff alleges the ALJ erred in giving only "some weight," and not controlling weight, to Dr. Schroder's treating opinion. Plaintiff contends that Dr. Schroder's opinion was well-supported by the objective and clinical findings of record and was not inconsistent with the other

10

substantial evidence of record. Plaintiff also argues the ALJ failed to identify the pertinent findings for his opinion and his minimal citations to Dr. Schroder's opinion and records indicate he did not properly evaluate the only treating source opinion in the record on plaintiff's psychological impairments.

The Commissioner contends that the ALJ's minimally articulated rationale for discounting Dr. Schroder's opinion satisfies the "good reasons" requirement under the Sixth Circuit law in *Wilson*, 378 F.3d at 544, and allows plaintiff "to understand the disposition" of his case. *Id*. The Commissioner argues that unlike *Wilson*, where the ALJ failed to specify any good reasons at all for giving less than controlling weight to the treating source opinion, here the ALJ explicitly specified that the opinion of Dr. Schroder was not given controlling weight because "it indicated limitations that were not supported by the evidence, including the claimant's testimony." (Doc. 14 at 9). The Commissioner asserts that while the ALJ did not explain his decision to give only "some weight" to Dr. Schroder's opinion in assessing the opinion evidence, the ALJ nevertheless discussed the evidence that contradicted Dr. Schroder's assessed limitations in the body of his decision, such as plaintiff's testimony about his ability to travel and activities of daily living, and as such complied with the good reasons requirement. (Doc. 14 at 9-10).

The ALJ's decision to give only "some weight" to Dr. Schroder's opinion is without substantial support in the record. The Court is unable to discern the basis for the ALJ's decision because his one sentence "analysis" gives no clue as to the evidence he relied on for his conclusion. The ALJ declined to give Dr. Schroder's opinion controlling weight because Dr. Schroder's opinion "indicated limitations that were not supported by the evidence, including the claimant's testimony" (Tr. 25), but the ALJ failed to explain this finding or reference Dr.

11

Schroder's clinical notes or other record evidence which purportedly support this conclusion. The only mention of Dr. Schroder's clinical notes in the ALJ's decision is in connection with the listings analysis: "When the claimant initially met with his treating psychologist his primary complaint was that [he] could not focus." (Tr. 20, citing Tr. 419). The ALJ's decision does not reflect that he considered Dr. Schroder's clinical findings outlined above which appear consistent with and to support his medical source statement of plaintiff's serious limitations. (Tr. 415-19). Nor did the ALJ cite to the portions of plaintiff's testimony that he believed were inconsistent with Dr. Schroder's opinion. The ALJ erred by discounting the treating source's opinion as not supported by the record without mentioning or discussing Dr. Schroder's treatment notes and medical assessment.

Contrary to the Commissioner's argument that the ALJ's minimal articulation is sufficient under *Wilson*, the ALJ's decision in the instant case suffers from the same analytical short-comings identified by Sixth Circuit in *Wilson*. The Sixth Circuit in *Wilson* stated that the ALJ erred by not clarifying whether a treating source opinion was not given controlling weight under the first regulatory factor (whether the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques") or the second regulatory factor (that the opinion was "inconsistent with the other substantial evidence in [the] case record"). In addition, and as it pertains to the instant case, the ALJ in *Wilson* erred when he "did not *identify the evidence* supporting such a finding, and did not *explain its application* of the factors listed in 20 C.F.R. § 404.1527([c])(2) to determine the weight given to [the treating physician's] opinion." *Wilson,* 378 F.3d at 546 (emphasis added). Similar to the ALJ in *Wilson*, the ALJ in the instant case did not clarify what he meant by the statement that Dr. Schroder's opinion was "not

supported by the evidence." It is not clear whether he meant that Dr. Schroder's opinion was not "well-supported by [his own] medically acceptable clinical and laboratory diagnostic techniques" or that the treating psychologist's opinion was "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). And like the ALJ in *Wilson*, the ALJ here did not identify any evidence whatsoever to support that finding or explain how the §§ 404.1527(c)(2) and 416.927(c)(2) factors impacted the weight he gave to Dr. Schroder's opinion. *Wilson*, 378 F.3d at 546. The "ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions *and for explaining precisely how those reasons affected the weight*' given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243) (emphasis added).

The ALJ was obligated to articulate "good reasons" based on the evidence of record for giving only "some weight" to the treating psychologist's opinion if he elected not to give it controlling weight, *Wilson*, 378 F.3d at 544, and to articulate his analysis of the evidence in such a manner that the reviewing court might follow his reasoning. *Lowery v. Comm'r*, 55 F. App'x 333, 339 (6th Cir. 2003). Contrary to the ALJ's conclusion, it appears that Dr. Schroder's clinical records as a whole support his assessment, or at the very least, support greater limitations than those found by the ALJ. The ALJ's reasons for discounting Dr. Schroder's assessment are impossible to discern from his brief and conclusory statement that the treating psychologist's opinion was "not supported by the evidence, including the claimant's testimony" (Tr. 25) and preclude "meaningful review" of the ALJ's application of the treating physician rule. *Smith*, 482 F.3d at 875; *Wilson*, 378 F.3d at 544. The ALJ's failure to articulate the reasons for the weight

13

given to Dr. Schroder's opinion denotes a lack of substantial evidence. *Blakley*, 581 F.3d at 407.

Nevertheless, the Commissioner asserts that plaintiff's testimony contradicted at least some of Dr. Schroder's assessment, and when the ALJ's decision is read as a whole, his discussion of such testimony satisfies *Wilson*'s good reasons requirement. For example, Dr. Schroder rated plaintiff's "ability to travel in unfamiliar places" as "poor or none" (Tr. 491), while plaintiff stated he drove himself to the consultative examination and testified he would go out to eat with his son and "sometimes" drove to his appointments with Dr. Schroder. (Tr. 19-20, 41).

Plaintiff testified that he does not drive "unless I have to" and that he "sometimes" has to drive himself to the doctor or the grocery store. (Tr. 41). This testimony is not inconsistent with Dr. Schroder's assessed limitation on plaintiff's ability to travel to "unfamiliar" places. As Dr. Schroder is the treating psychologist with whom plaintiff has visited on numerous occasions, there is no indication that the limitation on travel to "unfamiliar" places contradicts plaintiff's testimony. In addition, there is no evidence that plaintiff drives himself when he goes out to eat with his son or that his ability to drive himself to a one-time consultative examination is inconsistent with a "poor" ability to travel to unfamiliar places. The Commissioner also contends that while Dr. Schroder's opinion rated plaintiff's "restrictions of activities of daily living" as "extreme," plaintiff was able to "manage his own grooming and personal hygiene, prepare simple meals a few times per week, as well as care for her (sic) daughter, and help her with school." (Doc. 14 at 10, citing Tr. 299). Yet, the fact that plaintiff provided a place for his 18 year old daughter to live, microwaved "quick and easy" foods two times per week, and bathed and washed his hair when reminded (Tr. 299, 300, 423) is not inconsistent with Dr. Schroder's opinion on plaintiff's limitations in his activities of daily living. In the absence of any discussion or explanation of the alleged inconsistencies between plaintiff's testimony and Dr. Schroder's opinion by the ALJ in his decision, it is unclear to the

14

undersigned how these minimal activities undermine the entirety of plaintiff's treating psychologist's opinion.  In any event, the purported inconsistency between Dr. Schroder's opinion and plaintiff's daily activities is not a good reason to assign Dr. Schroder's opinion only some weight.  *See Meece v. Barnhart*, 193 F. App'x 456, 465 (6th Cir. 2006) (finding "the fact that Plaintiff engages in minor life activities is not inconsistent with disabling" limitations); *Gayheart*, 710 F.3d at 377 (finding a lack of substantial evidence supporting the ALJ's "apparent implication" that plaintiff's daily "activities are inconsistent with . . . restrictions noted" by plaintiff's treating physician where the "ALJ does not contend, and the record does not suggest, that [plaintiff] could do any of these [daily] activities on a *sustained basis*") (emphasis in original).

The Court also finds that the ALJ's decision does not reflect a consideration of the regulatory factors in assessing the weight to the treating psychologist's opinion.  Even if Dr. Schroder's opinion may not have been entitled to controlling weight, the ALJ was still obligated to consider the length, nature and extent of his treatment relationship with plaintiff; the frequency of examination; his medical specialty; the evidentiary support for the opinion and its consistency with the record; and other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Because the ALJ's decision mentions the treating psychologist's treatment notes in only one instance – briefly in connection with his listings decision citing to a single intake note (Tr. 20) – the Court cannot conclude that the ALJ weighed Dr. Schroder's opinion in accordance with the regulatory factors set forth in 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2).[4]

In addition, the ALJ's decision fails to explain how Dr. Schroder's opinion was inconsistent with the findings and opinion of Kevin Corbus, Psy.D., the consulting psychologist who examined plaintiff in October 2011 on behalf of the Social Security Administration.  (Tr. 391-96).  Plaintiff contends that Dr. Corbus's examination is not inconsistent with the opinion of the treating psychologist, Dr. Schroder, in that Dr. Corbus reported that plaintiff socializes with no one, appeared depressed, demonstrated motor manifestations of anxiety, and endorsed symptoms such as shaking, twitching and racing thoughts.  (Tr. 393-94).  Dr. Corbus also opined that due to plaintiff's fleeting ability to concentrate, he may exhibit a slower work pace than peers on tasks requiring rapid timed performance.  (Tr. 395).  Dr. Corbus further opined that plaintiff did not appear to have adequate coping strategies for his depressive and anxious symptoms.  (Tr. 396).  In contrast, the Commissioner contends that Dr. Corbus's opinion directly contradicts Dr. Schroder's opinion in several respects.  The Commissioner asserts that both psychologists assessed different GAF scores, limitations in daily living activities and social functioning, and limitations in attention and concentration.  (Compare Tr. 394-96 with Tr. 491).

---

[4] The Commissioner's reliance on *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009), for the proposition that even a one sentence discussion of the non-controlling treating source was sufficient to satisfy the good reason requirement is misplaced.  In rejecting the treating doctor's "Yes" response to a question posed by the plaintiff's attorney, the ALJ in *Allen* stated:

> Dr. McCord merely affirmed that it might be reasonable to conclude the claimant's symptoms had remained unchanged since December of 2003, an opinion the undersigned found to be speculative since Dr. McCord had not seen the claimant for the first time until some two years later, on December 8, 2005.

The Sixth Circuit determined that "[w]hile this stated reason may be brief, it reaches several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source, including: the length of the treatment relationship and the frequency of examination, 20 C.F.R. § 404.1527([c])(2)(i); the nature and extent of the treatment relationship, § 404.1527([c])(2)(ii); and the supportability of the opinion, § 404.1527([c])(3)."  *Allen*, 561 F.3d at 651.  The ALJ's statement in the instant case addresses none of these factors.

Whether the consistencies pointed out by plaintiff or the inconsistencies cited by the Commissioner support or undermine the ALJ's decision should not be decided in the first instance by this Court. Rather, this was a determination for the ALJ to make in assessing the weight to assign the treating psychologist's opinion. In the absence of the ALJ's identification and discussion of the evidence that purportedly supports his weighing of Dr. Schroder's opinion, including Dr. Corbus's findings, the Court is left without a meaningful basis to review the ALJ's decision despite the Commissioner's post-hoc rationalizations for that decision. To the extent the ALJ implicitly found that Dr. Schroder's opinion was not entitled to controlling weight because Dr. Corbus's opinion contradicted it, this would not be an appropriate treating-source analysis. *See Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) ("Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion. . . . In most cases . . . there will be conflicting medical opinions. If the existence of such a conflict is enough to justify denying the treating physician's report controlling weight, it would be a rare case indeed in which such weight would be accorded."). The Commissioner's contentions do not justify the ALJ's failure to adequately explain the weight given to Dr. Schroder's opinions. This is not a case of harmless error where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of . . . the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547. Accordingly, because the ALJ failed to follow proper procedure, a remand is necessary despite the fact that the ALJ's conclusion may ultimately be justified based upon the record evidence. *See Cole v. Astrue*, 661 F.3d 931, 939-40 (6th Cir. 2011) ("The ALJ's failure to follow

17

agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'") (quoting *Blakley*, 581 F.3d at 407).

Finally, the ALJ failed to weigh Dr. Corbus's opinion in accordance with agency regulations. Unless a treating sources opinion is given controlling weight, Social Security regulations provide that regardless of the source, every medical opinion will be evaluated and weighed considering the following factors: the length and nature of the treatment relationship, the evidence that the physician offered in support of his opinion, the consistency of the opinion with the record as a whole, and whether the physician was practicing a specialty. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). *Ealy*, 594 F.3d at 514. In this case, the ALJ's decision includes no analysis of the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in weighing Dr. Corbus's opinions, such as whether his conclusions are supported by the psychological testing results or are consistent with the record as a whole. The ALJ therefore failed to comply with Social Security regulations in not weighing this opinion evidence. *Cf. Dillman v. Comm'r of Soc. Sec.*, 990 F. Supp.2d 787, 800 (S.D. Ohio 2013) (remanding matter where ALJ failed to employ 20 C.F.R. § 404.1527(c) criteria in weighing opinion of consultative examiner).

The Commissioner does not specifically address the ALJ's failure to weigh Dr. Corbus's opinions in accordance with the Social Security regulations. Nevertheless, the Commissioner suggests this is harmless error because the ALJ properly considered Dr. Corbus's opinions and incorporated the limitations he assessed into plaintiff's RFC. (Doc. 14 at 15-16). The Commissioner asserts that, for example, the ALJ's RFC reflected Dr. Corbus's assessment that plaintiff "may show work pace slower to that of his work peers" on "tasks requiring rapid timed performance" by limiting plaintiff to understanding, remembering and carrying out only "simple

instructions" and performing only "simple tasks."  (Doc. 14 at 16, citing Tr. 21).  Contrary to the Commissioner's contention, limiting plaintiff to work involving simple instructions and simple tasks does not account for the speed- and pace-based limitations found by Dr. Corbus.  *See Ealy*, 594 F.3d at 516-17 (where the medical opinion evidence establishes specific pace, speed, and concentration limitations, ALJ must include such speed- and pace-based restrictions in RFC formulation).  Thus, even assuming the ALJ considered Dr. Corbus's opinion in assessing plaintiff's RFC, the ALJ's RFC formulation failed to accurately reflect the speed- and pace-based limitations assessed by Dr. Corbus.  This does not constitute harmless error under the circumstances of this case.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date.  *Faucher v. Sec'y of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994).  This matter should be reversed and remanded for further proceedings with instructions to the ALJ to re-weigh the medical and other opinion evidence in accordance with this decision; to reconsider plaintiff's RFC; and to further develop the medical and vocational evidence as warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further

proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).


Date:  <u>11/23/15</u>          <u>s/Karen L. Litkovitz</u>
                              Karen L. Litkovitz
                              United States Magistrate Judge

20

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHAEL I. SPURLOCK,                                    Case No. 1:14-cv-990
      Plaintiff,                                   Dlott, J.
                                                       Litkovitz, M.J.
      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).